Wm. W. Stevens and David Stevens, Exc'rs of Levi Stevens, *vs.* Julianna Gordy.—*December* 1850.

A testator devised to his daughter $200 and a negro woman after the death of his wife. The executors sold the negro and received the proceeds. The daughter, the legatee in remainder, during the life of the widow, the tenant for life, filed her bill in equity against the executors, asking that the proceeds of the negro be brought in and invested for the use of the tenant for life, and after her death, for the use of the complainant. The tenant for life was made a defendant, and the chancellor decreed that the proceeds of sale be brought into court, to be invested according to the prayer of the bill, with the interest that may have accrued thereon. Held : That this decree was erroneous ; the tenant for life cannot, in *this suit*, recover interest on the proceeds of sale.

The rights of the widow may not be protected by the decree : if she received the legacy, she would have no right to her thirds of the personal estate.

If the tenant for life were dead, and the executors were the persons to deliver the negro to the tenant in remainder, the latter could not in chancery claim the negro without at the same time claiming the $200.

Upon a bill by a legatee against executors for a legacy, it must be shown, either by proof or the admission of the executors, that there is a sufficiency of assets after payment of debts, &c., and this allegation need not in equity be denied.

Distribution accounts filed with answers of the executors, showing a sufficiency of assets, but not introduced into the case as testimony, are not evidence in the cause.

The court of chancery has no power during the life of the tenant for life, to order the proceeds of sale of the negro to be invested for the benefit of the legatee in remainder. While the tenant for life is living, she is the person to claim the negro.

A legatee in remainder may claim an inventory, if one is needed, but cannot call for security.

Appeal from the *Court of Chancery.*

The bill in this case was filed on the equity side of *Somerset* county court, by the appellee, (formerly *Julianna Stevens,*) and exhibits the will of *Levi Stevens,* the father of the complainant, which contains the following clause: "I give and bequeath to my daughter *Julianna Stevens,* two hundred dollars, to be paid to her out of my personal property, also my negro woman *Rose,* from and after the death of my wife, to her and her heirs and assigns forever."

The bill alleges that the testator died in December, 1834, that letters testamentary were granted to the appellants the executors of the will, they having given bond as such executors; that complainant afterwards intermarried with *Wm. Q. Gordy*, from whom she was divorced *a vinculo*, by the act of 1837, ch. 84; that the executors, in March 1838, sold said negro woman for $650, and that she was transported beyond the limits of the State. The bill suggests that complainants right to the negro was limited to take effect after the death of her mother, *Mary Stevens*, the widow of the testator, and further suggests that limitations will, in a short time, bar her action on the bond. The prayer of the bill is, that said sum of $650 may be secured for her benefit, and for the benefit of said *Mary Stevens*, by investment in some safe and productive fund. *Mary Stevens*, the widow, is made a defendant, the complainant suggesting in the bill that she is a material party, and that she has no authority to make her a complainant.

*Mary Stevens*, in her answer, admits most of the allegations of the bill. In relation to the sale of the negro, she says, that the sale was made by *William W. Stevens*, one of the defendants, and that the money was received by him.

The executors in their answers, deny that they sold the negro to a purchaser for a foreign market, as charged in the bill. They aver that in May, 1836, they settled a final account as executors, and file a copy thereof marked No. 1, and further state that distribution was made on the basis of said final account, and they file a copy of said distribution marked No. 2. They also state that they paid to the widow a large part of her distributive share, and gave their obligations for the balance, and that she has given a receipt to them for her said share, and that complainant's legacies are awarded to her in said distribution.

They further state that in November 1836, the negro was in possession of the widow, *Mary Stevens*, and was taken from her by *Gordy*, the then husband of complainant, and that being unable to get hold of said slave, they sold her on the 26th of that month for $650, and they admit that she was transported beyond the limits of the State. They charge that *Gordy*

is living, and they submit whether he is not a necessary party. They also submit whether the complainant can maintain this suit during the life of *Mary Stevens* the tenant for life of the negro. They further submit as a question of law, the matters relating to the statute of limitations, and also whether the case is not properly triable at law.

The distribution account No. 2, charges the executors with a balance due the estate by their final account No. 1, of $1960.23, and then among other distributions the sum of $400 was awarded to complainant, to wit: "$200 for her legacy of that amount, and $200 for negro *Rose*, appraised at $200 from and after the death of the mother."

The parties then agreed that the cause be referred to the auditor, to state an account according to his own views, and also according to the instructions of the respective solicitors, and that he should take and return testimony for the parties on ten days' notice. A replication was then filed to the answers, and at this stage of the proceedings the cause was removed to chancery on the suggestion of the complainant. No testimony was taken on either side, and no report was ever made by the auditor.

At September term 1848, the cause was submitted during the sittings, on the part of the complainant, and the chancellor (JOHNSON) expressing the opinion that the $650 should be invested as prayed in the bill for the use of *Mary Stevens* for life, and after her death, for the use of the complainant, by a decree of the 8th of November 1848, ordered, that the defendants should bring said sum into court for such purpose, and the interest which may have accrued on the same. The complainant then applied for a *fi. fa.* on this decree, and in their petition ask that interest may be computed from the 26th of November 1848, the day of the sale of the negro, and the chancellor directed the writ to issue, and interest to be computed from said date. The executors then appealed from the decree.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

ISAAC D. JONES and WM. SCHLEY, for the appellants, insisted upon a reversal of the decree on the following grounds.

1st. That even if the decree was properly passed, so far as it requires the payment into court of the principal sum of $650; still it was erroneous, in so far as it requires the payment into court of the interest which had accrued; and which interest, as shown by his subsequent order, was meant, and intended by the chancellor to be computed from the 26th November 1856; and as to which interest, as shown by the same decree, the complainant has no right or claim whatever.

2nd. That the decree is not warranted by the pleadings in the cause. There being no testimony whatever, the act of 1832, chap. 302, sec. 5, does not apply. The decree is not consistent with the case presented by the bill. If the complainant desired to obtain a decree, on the basis of the state of the case presented by the answer, the bill ought to have been amended accordingly, so as to warrant such a decree.

3rd. That the said slave was properly delivered to the widow; and the appellants, *as executors*, thereby discharged themselves from all responsibility to the legatee in remainder, in respect of said slave. The act of sale, if wrong, was not a breach of trust, but *a tort*. The remedy for redress is at law.

4th. That as the sale took place, by the complainant's own showing, during her coverture, the right of action vested in the husband, *William Q. Gordy;* and notwithstanding the complainant's subsequent divorce, no such right accrued to her.

5th. That the complainant, as legatee in remainder, has no *present* right to the slave, or to her value. She can make no claim, specifically, until after her mother's decease.

6th. That the bill cannot be sustained, as a bill *quia timet;* because there are no allegations of insufficiency of the executors, and it is not to be presumed. The suggestion, as to the age of the board of the executors, would be of value in an application to the Orphans court for new security, but cannot avail here. If the complainant looks to the *bond* of the executors as her security, when her right shall devolve, her remedy is in a different *forum*.

Wm. W. Handy, for the appellee, contended, for an affirmance.

1st. That it does not appear from the record, that the slave *Rose* was ever delivered or paid over to *Mary Stevens;* it is not so averred in the answer of the executors, but if it was, it would be an affirmative averment, put in issue by the replication, and unsupported by proof—and that consequently there is nothing in the 3rd point of the appellant's solicitor.

2nd. That the decree was properly passed; that although it is true, the complainant has no claim whatever to the arrears of interest on the $650, the amount of the sale of negro *Rose,* as received by the executors, yet, the arrears of interest are clearly due to *Mary Stevens,* one of the defendants; that said *Mary* had answered the complainant's bill, and has prayed the court to protect her rights. That the matters set up by the executors in *avoidance,* are put in *issue* by the replication, and are not supported by proof. That the executors having, as appears by their answer, on the 26th of November 1836, sold the negro woman *Rose,* for $650, and received the money, are to be regarded as trustees, and are liable to account in a court of equity; that from any thing appearing in the record, it is a continuing trust;—that even though the executors were liable in tort, it is competent for the complainant to waive it, and hold them responsible as trustees: and so likewise may *Mary Stevens.*

3rd. That the averments of the bill are sufficient—that there was no necessity for proof, inasmuch as the answers admit all the material allegations, and that if from the bill and answer, the equity clearly appears, no objection can be taken in the Court of Appeals to the sufficiency of the averments in the bill, since the act of 1832, chap. 302, sec. 5,—there not having been any exceptions filed to the sufficiency of the averments of the bill.

4th. That the complainant, although she has no *present* right to the slave *Rose,* or to her value, (her mother, *Mary Stevens,* being yet alive,) still nevertheless, is entitled to have the fund secured to her.

5th. That the complainant's right to negro woman *Rose*, of her value, from the executors, was a *chose in action* due her, and that upon her divorce from her husband, *William Q. Gordy*, in 1837, survived to her, in as full and ample a manner, as if he had died.   In support of this proposition I refer to 8th *Mass. Rep.*, 99—2nd *Seargeant and Rawl.*, 491.

MAGRUDER, J. delivered the opinion of this court.

The father of the appellee, who was the complainant in the court below, bequeathed to her $200, and after the death of her mother, a negro woman.   The complainant also has an interest in the residue of the personal estate.   The bill of complaint alleges, that the negro has been sold, and the object of the bill is to compel the executors of the deceased to bring the purchase money into court, to be invested in some safe fund for the benefit of the mother during life, and then for the benefit of the complainant.   The chancellor decreed, that the purchase money be brought into court, and also the interest thereon from the time of the sale.   From this decree the appeal is taken.

We think that the chancellor has erred.   *In this suit*, interest due on the purchase money, (if any is due,) cannot be recovered by the mother.   If she be entitled to it, we cannot determine in this suit that it has not been paid to her.   The presumption is, either that she is not entitled to the negro for life, or that she has made an arrangement with her sons quite satisfactory to herself.   A person who is entitled to the services of a negro may not be willing to receive as an equivalent for those services, the interest upon the money for which the negro was sold.   At all events, it is no question in this case what sum is now due to the legatee for life, and she alone is to determine when and in what form the claim shall be exhibited.

But whether she has any claim at all to the negro during life, is a question, which for another reason, we have no right now to decide.   She is the widow of the testator, and if she claims this legacy, what right has she to a third of the personal estate?   Her rights might not be *protected* by such a decree.

It is true, that a court of chancery sometimes exercises jurisdiction, in order to prevent a multiplicity of suits. But that does not give one person a right to sue for what is supposed to be due to another. It might have authorized the complainant to sue for other claims which she has and which we do not learn from the record have been satisfied. If her mother was dead, and the executors were the persons to deliver the negro to her, she could not claim her in chancery without at the same time demanding the $200, or admitting that it was paid.

But how are we to ascertain from this record, that the complainant is entitled to any part of the legacy? It must first be shown, either by proof, or the admission of the executors, that there are assets sufficient, after payment of debts, funeral charges, &c. This is no where charged, admitted or proved, and in chancery, (though at law it is otherwise,) it need not be denied.

Statements to be found in the record, might have thrown some light upon the subject, but these are not evidence, or, indeed, introduced into the case as testimony.

We cannot then affirm the decree. We were anxious to remand the case to chancery to amend the proceedings, if we could have found any thing in the record to justify that course.

Even if the money is to be paid when the legacy for life is determined, there must be deducted from it the executor's commissions, and what it is supposed she has already received as an equivalent for her interest in the negro.

But what right can the appellee have to ask the chancellor to pass any such order as he is asked to make in regard to this negro? While her mother is alive, she is the person to claim the negro. Formerly, indeed, some power like that now claimed was supposed to be possessed by the court of chancery, but it has long since been settled to be otherwise. See *5th John's Chy. Reports*, 349. A legatee might, indeed, claim an inventory, if one was needed, but cannot call for security. 1 *Brown's Chy. Rep.*, 279.

The bill and proceedings in the case before us, do not authorize the chancellor to give relief, and we cannot conjecture,

that by any amendment of it, the complainant could make a case which would entitle her to the relief which she seeks.

JUGDMENT REVERSED, AND

BILL DISMISSED WITH COSTS,